IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

GLENN WANE HAWKINS                                                    PETITIONER

v.                                                                                   No. 1:14CV81-SA-RP

WARDEN HUBERT DAVIS, ET AL.                                           RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Glenn Wane Hawkins for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Mr. Hawkins has submitted a traverse. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Procedural Posture

The petitioner, Glenn Wane Hawkins, is in the custody of the Mississippi Department of Corrections and is currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. Hawkins was convicted of one count of depraved heart murder in the Circuit Court of Monroe County, Mississippi. On February 24, 2011, he was sentenced to serve life in the custody of the Mississippi Department of Corrections ("MDOC"). State Court Record ("SCR"), Vol. 2, p. 219.

Hawkins appealed his conviction and sentence to the Mississippi Supreme Court raising the following issues through counsel:

**Issue 1**. Whether the evidence was sufficient to sustain the jury's verdict of depraved heart murder.

**Issue 2**. Whether the jury was properly instructed on the distinctions between depraved heart murder and culpable negligence manslaughter and whether the trial court erred in failing to declare a mistrial when it was apparent that the jury was confused on the definitions of "depraved heart" as opposed to "culpable negligence."

On September 20, 2012, the Mississippi Supreme Court affirmed the judgment of the trial court.

*Hawkins v. State*, 101 So.3d 638 (Miss. 2012), *reh'g denied,* Dec. 13, 2012 (No. 2011-KA-00557-

SCT). Hawkins did not file a petition for writ of *certiorari* to the United States Supreme Court.

On June 28, 2013, Hawkins filed an "Application for Leave to File Motion for Post

Conviction Relief" in the Mississippi Supreme Court, signed on June 26, 2013, raising the following

issues *pro se*:

> Issue 1. The State failed to present sufficient evidence in order to prove beyond a reasonable doubt the essential element of "criminal agency" necessary to establish the "corpus delicti" of a homicide to the exclusion of every other reasonable hypothesis.
>
> Issue 2. The trial court err[ed]where the Judge allowed the State to present the issue of self-defense through jury instruction in which [diverted] the jury's attention away from and nullified the defendant's true theory of defense "excusable homicide." And [counsel] were deficient for giving up objections concerning this issue which prejudiced defendant.
>
> Issue 3. The trial court committed reversible error by granting inadequate and incomplete jury instructions.

On October 9, 2013, the Mississippi Supreme Court denied the application. (Case No. 2013-M-

01113). The court found that Hawkins' claims regarding the sufficiency of the evidence were barred

under the doctrine of *res judicata*. Miss. Code Ann. § 99-39-21(3). Further, the court found that

Hawkins' claims regarding the weight of the evidence and the jury instructions were without merit –

and procedurally barred under Miss. Code Ann. § 99-39-21(1) (failure to raise objections at trial or on

appeal). The court held that Hawkins' claim of ineffective assistance of counsel failed both prongs of

*Strickland v. Washington*, 466 U.S. 668 (1984). *Id.*

Hawkins raises the following grounds for relief in the instant Petition for Writ of Habeas

Corpus (as restated by the court in the interest of brevity and clarity):

> **Ground One**.    The State failed to present sufficient evidence as to each element of depraved heart murder to prove Hawkins' guilt beyond a reasonable doubt.
>
> **Ground Two**.    Trial court erred giving inadequate jury instructions on the

distinction between depraved heart murder and culpable negligence manslaughter.

**Ground Three**.  Trial counsel provided ineffective assistance because he had no experience with murder cases, and depraved heart murder is a charge seldom brought in Mississippi.

### Facts Established at Trial[1]

On February 22-23, 2011, Glenn Wane Hawkins was tried for the murder of  Ms. Rita Fair, which occurred on or about August 16, 2007.  Attorneys Christopher E. Bauer and Timothy B. Tucker represented Mr. Hawkins.  The trial court held a suppression hearing prior to trial regarding the Hawkin's statement at the crime scene.  SCR, Vol. 3, p. 27-61.  After hearing from Deputy John Bishop and Hawkins, the trial court found that the Hawkins' statement at the crime scene was admissible.  SCR, Vol. 3, p. 61-64.  The court found that, at the time of the statement, Hawkins had not been arrested, detained, or taken into custody, and his utterance to law enforcement was spontaneous.

At the suppression hearing, Deputy Bishop testified that, when he arrived at the crime scene, he was met by Hawkins at the front door.  SCR, Vol. 3, p. 40.  Bishop then asked Hawkins "what's going on, man?"  *Id*.  Hawkins answered by saying that "he killed her," then clarified that by saying "he killed Rita," the victim.  *Id*.

At trial, Deputy Curtis Knight testified that, when he arrived at the crime scene, he found Ms. Fair's body lying in a doorway.  SCR, Vol. 4, p. 187.  She was face-up on her back, and "had sustained severe trauma to her face, neck and her arms."  SCR, Vol. 4, p. 188.  Knight determined that the victim had recently had a full hysterectomy.  *Id*.  He then testified that photographs taken of the victim in the doorway were a "fair and accurate depiction" of the scene as he observed it on August 16, 2007.  SCR,

---

[1]Hawkins did not testify at trial; however, he made statements to law enforcement officers, some of which were captured in audio or video recordings.  Law enforcement officers also testified regarding other statements Hawkins made that were not recorded.  These are Hawkins' statements to which the court refers throughout this memorandum opinion.

Vol. 4, p. 188-189.[2] Knight testified that the victim's right eye, as shown in photograph was "extremely swollen shut and discolored," and there was "blood" visible on her nose. SCR, Vol. 4, p. 197. She also had marks "around her neck" and on her arms. SCR, Vol. 4, p. 190. Knight believed these injuries to be indicative of "possible defensive wounds" indicating that the victim was trying to defend herself prior to her death. *Id.*

While in custody, Hawkins stated, without being asked, that "she stabbed me." Upon Examining Hawkins' chest, Knight found "two scratch marks." SCR, Vol. 4, p. 193. Knight stated that Exhibit 4, the photograph of the Hawkin's chest, was an accurate depiction of the scratches that day. SCR, Vol. 4, p. 194. There was no knife was anywhere at the crime scene. SCR, Vol. 4, p. 191. Knight also testified that the scratches appeared to be several days old, as he observed "festering." SCR, Vol. 4, p. 204. Deputy Knight testified that "a fake fingernail that the ladies wear" was seen was missing the victim's finger and was found on the floor near her body. Exhibit 2 (photograph showing finger nail on floor near the body of the decedent), SCR, Vol. 4, p. 195.

The photographic evidence introduced at trial, and shown to the jury, included pictures of the victim taken at the crime scene. Photographic exhibits 2 and 3. Those photographs reveal extensive bruising to her face and neck. *Id.* Photograph 6 shows the victim's eye, black and blue and swollen completely shut, as well as bruising on her lip, cheek, forehead and the side of her nose. That

---

[2] The photographs mentioned in this memorandum opinion were not provided as part of the State Court Record in this case. Indeed, the actual evidence introduced at trial is seldom included in the record, unless the court requests it. Thus, the court's characterization of the photographs comes entirely from the testifying witness' descriptions of them. In any event, the court need not view the photographs to resolve the issues in this case, as the prosecution, defense, experts, and the jury all viewed them. As discussed below, the jury (the ultimate finder of fact) considered the photographs during deliberations in the context of the other evidence, as was its duty. The court's opinion of the import of the photographs cannot override that of the jury.

photograph also showed blood in both her nostrils. Photographic exhibit 1 and defense exhibit 1 showed minor injuries to Hawkins' chest.  Photographic exhibit 5 shows bruises to the side of the victim's neck, face, and arm.

Dr. Steven Hayne, the State's pathologist, testified that he conducted the autopsy on the decedent, Ms. Rita Fair.  SCR, Vol. 4, p. 213-260.  Hayne testified that the cause of death was blunt force trauma to the face and neck. SCR, Vol. 4, p. 234-235.  He found that the bruises and abrasions were "consistent with being beaten."  SCR, Vol. 1, p. 223.  He also testified that this trauma resulted in "cardiac arrhythmia" and "death," given her pre-existing coronary heart disease.  SCR, Vol. 4, p. 234-235.  Dr. Hayne testified that his examination determined that the victim suffered from "severe heart disease" and "hypertension." SCR, Vol. 4, p. 220, 235.  Dr. Hayne found a three and a half inch bruise on the victim's face, as well as bruises on her right and left eyes, one eye swollen shut.  There was a two and a half inch bruise and a half inch scrape below the right eye. There was a bruise below the chin about two and a half inches wide, as well as bruise on the lower lip.  SCR, Vol. 4, p. 220-221.  Dr. Hayne also found that there were "abrasions" and "bruises" to the victim's neck.  SCR, Vol. 4, p. 221.  There were also internal injuries to her "larynx,  esophagus, and hyoid bone," in the front of the victim's neck.  SCR, Vol. 4, p.  222.  Hayne found the injuries to the victim's hands, arms, and body consistent with "defensive posturing injuries."  SCR, Vol. 4, p. 222.

Dr. Hayne testified that, based on national forensic standards, when a victim with coronary artery disease is subjected to blunt force trauma producing cardiac arrhythmia, the death is not classified as a natural death, but a homicide.  SCR, Vol. 4, p.  235.  Dr. Hayne believed, based upon the results of his autopsy, that this physical trauma produced a cardiac arrhythmia which resulted in the victim dying as shown in the photographs.  SCR, Vol. 1, p.  236.  While there were toxicology results

indicating the victim had consumed alcohol and drugs, the forensic analysis indicated that these results were consistent with some degree of impairment, but not with "lethality." Hayne testified that there would have been evidence of "cerebral edema" had that have been the case, and the autopsy revealed no such edema. SCR, Vol. 4, p. 232.

Deputy John Bishop with the Monroe County Sheriff's office testified that, on August 16, 2007, he answered a call to investigate a possible death on Highway 45 north, just outside of Aberdeen. SCR, Vol. 4, p. 172. When he arrived on the scene, he encountered Hawkins at his opened door. When Bishop asked what was going on, Hawkins answered that "he killed her." SCR, Vol. 4, p. 173. Bishop identified in the court room as the person who spoke these words to Bishop. SCR, Vol. 4, p. 173.

At trial, a video cassette was played for the jury. In that cassette recording Hawkins stated that he told his son, "I killed her." In addition, he says, "she pushed my button and we got into a tussle." SCR, Vol. 4 and 5, p. 175-176; 382-383.

At the conclusion of the State's case, Hawkins moved for a directed verdict, alleging a lack of evidence that his actions toward the victim could be considered depraved heart murder. SCR, Vol. 4, p. 277. The trial court denied a motion for a directed verdict. *Id*. The trial court found that the prosecution had made out a prima facie case, and the jury would resolve any conflicts in the testimony and evidence. SCR, Vol. 4, p. 278.

Dr. James Lauridson, an Alabama pathologist, testified on behalf of Hawkins. SCR, Vol. 4 and 5, p. 285-313. Lauridson testified that it was clear that the victim died as a result of "significant heart disease." SCR, Vol. 4, p. 287. However, he found that he could not resolve the crucial issue of whether the trauma producing the victim's injuries precipitated her heart attack and death based upon

the available evidence. SCR, Vol. 4, p. 287-288. Dr. Lauridson testified that, according to accepted national standards, in order to find that blunt force trauma or a stressful event precipitated a lethal cardiac event, the trauma or stress must have occurred immediately prior to the cardiac event, and the event must occur "while that emotional stress is still present." *Id*. at 297-298. He stated that it was not possible to determine exactly when the trauma visible on the victim occurred. *Id.* at 287-288. He testified that, from examination of a body, it is difficult to determine when the death occurred in relation to the trauma. *Id.* He also did not believe there was sufficient evidence to conclude that the victim had been strangled. SCR, Vol. 4, p. 295.

Dr. Hayne testified in rebuttal. SCR, Vol. 5, p. 316-362. Hayne found that there was physical evidence on the arms, hands, palms, and an injured fingernail consistent with the observed discolored injuries being "defensive wounds." SCR, Vol. 5, p. 318. Hayne found that there was physical evidence consistent with the application of manmade force applied directly to the neck of the victim, if not evidence of actual strangulation by use of hands or a ligature. SCR, Vol. 5, p. 319. Dr. Hayne found the injuries to the victim's neck would not be consistent with any injuries from a fall to the floor. SCR, Vol. 5, p. 320.

Hawkins chose not to testify. SCR, Vol. 5, p. 313. After hearing all the evidence, the court instructed the jury on the elements of depraved heart murder and culpable negligence manslaughter. During deliberations, the jury sent four separate notes to the trial judge indicating that they did not understand the difference between the two crimes. Each time, the trial judge conferred with the attorneys, and, after the fourth note, the judge gave the jury an additional instruction on the difference between depraved heart murder and culpable negligence manslaughter. The jury ultimately found Hawkins guilty of murder, and the trial court imposed a sentence of life in the custody of the

Mississippi Department of Corrections.  SCR, Vol. 5, p. 401-403.

### Scrivener's Errors

As an initial matter, Mr. Hawkins identified several scrivener's errors in the State's response to the instant petition for a writ of *habeas corpus*.  He notes that in one instance the State refers to the petitioner as "Lewis," rather than "Hawkins," and in another refers to the crime of conviction as "armed robbery," rather than "depraved heart murder."  The State also inadvertently used the word "State," where the word "Petitioner" should have gone.  The State's meaning in its response to the petition is clear, despite the copy-and-paste errors; indeed, Mr. Hawkins correctly surmised that the errors are simple mistakes, which have no bearing on the outcome of this case.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has considered all three of Hawkins' grounds for relief on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added).  The first exception, subsection (d)(1), applies to questions of law.  *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000).  The second exception, subsection (d)(2), applies to

- 8 -

questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any ground of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection

(d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One:  Sufficiency of the Evidence

The jury convicted Mr. Hawkins of depraved heart murder.  He argues, however, that the evidence introduced at trial was insufficient to sustain his conviction.  Under Mississippi law, the elements of depraved heart murder under Miss. Code Ann. § 97-3-19 are:

> The killing of a human being without the authority of law by any means or in any manner ... [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.

Miss. Code Ann. § 97-3-19(a) (2004).[3]  Hawkins was sentenced to serve life in the custody of the MDOC in under this statute.  SCR, Vol. 2, p. 219.  The trial court gave the following jury instruction setting forth the elements of depraved heart murder:

> The defendant, GLENN WANE HAWKINS, has been charged by indictment with the crime of Depraved Heart Murder for having, without authority of law, killed Rita Fair. If you find from the evidence in this case beyond a reasonable doubt that the deceased, Rita Fair, was a living person, and the defendant, GLENN WANE HAWKINS did willfully, unlawfully, and feloniously and without authority of law kill Rita Fair, a human being, while in the commission of an act eminently dangerous to others and evincing a depraved heart, to wit:  beating and choking Rita Fair, regardless of human life, although without any premeditated design to effect the death of Rita Fair, then you shall find the defendant, GLENN WANE HAWKINS, guilty of Depraved Heart Murder.
>
> If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of Depraved Heart Murder.

SCR, Vol. 2 at 191.  As the elements in the depraved heart murder jury instruction track the language in the statute, the trial court properly instructed the jury on this charge.

---

[3] Mr. Hawkins was convicted under the 2004 revisions to Mississippi's depraved heart murder statute; as such, the court uses the language from that version, rather than later versions.

In addition, the State introduced sufficient evidence to support each element of depraved heart murder. A petitioner seeking *habeas corpus* relief may prevail on a claim that the evidence was insufficient to support the verdict if the evidence, when viewed in the light most favorable to the State, is such that no reasonable finder of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5th Cir. 1985). Under *Jackson*, a trier of fact may find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992); *see also U.S. v. Vargas-Ocampo,* 747 F.3d 299, 302 (5th Cir. 2014). This deferential standard review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

The Mississippi Supreme Court summarized the evidence introduced at trial:

> In the present case, the State produced evidence that the victim sustained "severe trauma" to her upper body, including what Hawkins himself described as "a big ol' ass black eye." The jury saw photographs of Fair's injuries and heard testimony that she had "defensive wounds." The jury also heard Hawkins tell the investigating officers that Fair "made [him] so mad" when she said she was cheating on him, and that he was "sure" that he had hit her. Shortly after Fair's demise, Hawkins told both his son and a deputy sheriff that he had killed her. In addition, the State's medical expert testified that the fatal heart attack was a direct result of an assault.

*Hawkins v. State*, 101 So. 3d at 642-43 (emphasis added).

The Founders established in our Constitution that an accused has the right to a trial by jury in a criminal case. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. (emphasis added). The requirement of jury trial in a criminal case is applicable to the states through the Fourteenth Amendment. *Duncan v.*

- 11 -

*Louisiana*, 391 U.S. 145, 156 (1968). It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring).

For these reasons, Hawkins' claim regarding the sufficiency of the evidence to support his conviction must fail. Though he introduced evidence and expert opinion contrary to that introduced by the State, the jury heard the testimony, considered documentary evidence, and unanimously resolved the issues against him. This ground for relief is without merit and will be denied.

### Ground Two:  Improper Jury Instructions

Mr. Hawkins argues in Ground Two of the instant petition that the trial court did not properly instruct the jury as to the difference between depraved heart murder and culpable negligence manslaughter. As set forth below, this claim is utterly without merit and will be denied.

As discussed above, the court presented a proper instruction to the jury regarding the elements of depraved heart murder. Mr. Hawkins also faced the culpable negligence manslaughter (a lesser included offense to deprave hear murder). Under Mississippi law, culpable negligence manslaughter is the:

> … killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter.

Miss. Code. Ann. § 97-3-47. The trial court gave the following jury instruction as to culpable negligence manslaughter:

> If you find that the State has failed to prove any one or more of the essential elements

of the crime charged, you shall find the defendant not guilty of the charge. You will then proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Culpable Negligence Manslaughter.

If you find from all of the evidence in this case beyond reasonable doubt that the defendant, GLENN WANE HAWKINS, in Monroe County, Mississippi, on or about the date charged and testified about did unlawfully and feloniously kill and slay Rita Fair, a human being, by Culpable Negligence in that he did feloniously act in such wanton and grossly negligent manner as to evidence reckless disregard for the value of human life, to wit: beating ad choking Rita Fair, and as a result of such grossly negligent action cause the death of Rita Fair, then you shall find the defendant guilty of Manslaughter by Culpable Negligence.

If you find beyond reasonable doubt from the evidence in this case that the defendant is guilty of the crime charged or a lesser crime as defined, but you have a reasonable doubt as to the crime of which the defendant is guilty, you must resolve that doubt in favor of the defendant and find him guilty of the lesser crime.

SCR, Vol. 2 at 43. This instruction also tracks the language of the statute: the killing, of a human being, by culpable negligence, and without authority of law ("unlawfully"). The instruction also sets forth how the jury should consider the lesser included offense if in doubt regarding the charged offense.

After four written questions from the jury regarding the difference between culpable negligence manslaughter and depraved heart murder, the court gave an additional instruction:

Culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life. Depraved-heart murder and culpable negligence manslaughter are distinguishable simply by degree of mental state of culpability. In short, depraved-heart murder involves a higher degree of recklessness from which malice may be implied.

SCR, Vol. 6 at 188 (Jury Instruction C9). The Mississippi Supreme Court found this additional instruction to be an accurate statement of the law, noting: "This instruction is taken, *verbatim*, from this Court's decisions." *Hawkins v. State*, 101 So.3d 638, 643 (Miss. 2012) (citations omitted).

The trial court gave jury instructions which tracked the language of the criminal statutes

- 13 -

setting forth the elements of the charged crime and its lesser included offense. The jury nonetheless struggled with the difference between the two, sending the trial court four notes to that effect. With the agreement of all counsel, the court provided the jury with an instruction distinguishing the offenses, and the jury reached a unanimous verdict soon after. The Mississippi Supreme Court found that the additional instruction accurately set forth state law, and "the highest court of the state is the final arbiter of what is state law." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 61 S. Ct. 179, 183, 85 L. Ed. 139 (1940). Thus, the trial court properly instructed the jury on the elements of depraved heart murder and the difference between that crime and the lesser included offense of culpable negligence manslaughter. This ground for relief is wholly without merit and will be denied.

### Ground Three: Ineffective Assistance of Counsel

In his final ground for relief, Mr. Hawkins argues that his defense attorneys were ineffective because they were inexperienced with murder cases, and prosecutors in Mississippi rarely charge defendants with depraved heart murder.[4] Further, Hawkins argues that counsel should have tried to impeach Dr. Steven Hayne based upon Hayne's practice of performing far more autopsies per year than the national standard – and Hawkins' belief that Dr. Hayne acted more as an advocate for the state than an impartial arbiter of scientific truth as he sees it. In addition, Hawkins argues that counsel provided ineffective assistance by failing to call various witnesses, primarily to show that the victim had previously attacked Hawkins with a claw hammer near Thanksgiving in 2006 and had admitted a propensity for aggressive behavior after consuming alcohol and prescription drugs. Hawkins believes

---

[4] Mr. Hawkins had the benefit of two attorneys to defend him in this case. In this opinion, the court will sometimes refer to these attorneys, collectively, as "counsel."

that such testimony would have caused the jury to believe that the victim attacked him first and that he acted in self-defense. This ground for relief is likewise without merit.

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, a petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

Mr. Hawkins has provided only his bare allegation that defense counsel had no experience defending a murder charge, and bare allegations are insufficient to sustain a claim for *habeas corpus* relief:

> [C]onclusory allegations of ineffective assistance of counsel do not raise a
> constitutional issue in a federal *habeas* proceeding. *Ross v. Estelle*, 694 F.2d 1008,
> 1012 (5th Cir. 1983). "In the absence of a specific showing of how these alleged
> errors and omissions were constitutionally deficient, and how they prejudiced his
> right to a fair trial we [can find] no merit to these [claims]." *Barnard v. Collins*,
> 958 F.2d 634, 642 (5th Cir. 1992).

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). In any event, having reviewed the record in this

case, the court finds that – regardless of their level of experience – counsel mounted a vigorous

defense at all stages of the case. They challenged the State's evidence, objected to testimony, and

subjected Dr. Hayne, the State's pathologist, to thorough cross-examination. Counsel elicited

testimony from Dr. Hayne that he did not possess the certification currently required to be the State's

forensic pathologist – and that Hayne had actually walked out of the examination to acquire that

certification. Indeed, counsel established, through examination of the defense's forensic pathologist

and cross-examination of Dr. Hayne, that Hayne performed over 1,000 autopsies per year,

approximately *three times* the number recommended by the certifying body (about 300).

     During both examination and cross-examination of witnesses, both defense attorneys showed

that they were intimately acquainted with the facts of the case, as well as various learned treatises

regarding forensic pathology. Counsel's examination of the defense witness and cross-examination of

the State's witnesses show extensive pretrial preparation. Counsel also prepared jury instructions and

actively participated during the process of selecting the instructions ultimately given to the jury.

Counsel's representation was far above the minimum constitutional standard, and this ground for relief

will be denied.

     Mr. Hawkins' claim regarding uncalled witnesses is likewise without merit.

     Complaints of uncalled witnesses are not favored in federal *habeas corpus* review
because allegations of what a witness would have testified are largely speculative.
Where the only evidence of a missing witnesses' testimony is from the defendant, this

- 16 -

Court views claims of ineffective assistance with great caution.

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (internal citations omitted); *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985); *Sayre v. Anderson,* 238 F.3d 631, 635-636 (5th Cir. 2001). Further, courts are reluctant to grant *habeas corpus* relief based upon uncalled witnesses "because the presentation of testimonial evidence is a matter of trial strategy . . . ." *Buckelew v. United States*, 575 F.2d 515,521 (5th Cir. 1978).

In this case, Mr. Hawkins argues that counsel should have called various witnesses to show that, in an altercation occurring in 2006, the year before the victim's death, she had attacked him with a claw hammer. Hawkins argues that such testimony would have strengthened his argument that he acted in self-defense by showing that the victim had a propensity for violence against him. However, according to Hawkins, the victim told law enforcement at the time of the 2006 incident that Hawkins had hit *himself* with a claw hammer. Thus, this testimony is a double-edged sword, as the jury could believe that the victim was the aggressor – or could find that Hawkins injured himself to *portray* the victim as the aggressor.

The prosecution in this case argued that the wounds on Hawkins' chest were either self-inflicted or the result of the victim scratching him as they fought – not the result of a knife attack as he claimed. As such, the jury could have found that the small injuries to Hawkins' chest in the present case were an attempt to falsely portray the victim as the aggressor. Further, it is undisputed that Hawkins did not seek medical attention for the victim for 30 to 40 minutes after the fight, and he stated that during that time, he changed out of bloody clothes and cleaned and put away the knife purportedly used to attack him. There was no explanation for this behavior (other than that he took these puzzling actions out of "shock.") Neither law enforcement officers nor Hawkins ever located the knife or the bloody clothes. Given the complete lack of physical evidence to support Hawkins'

- 17 -

version of events – and the chance that the testimony he seeks could have been used against him – counsel's choice not to call these witnesses was a rational one.

Hawkins also argues that counsel should have called several witnesses to show that the victim had told others that she gets aggressive while consuming alcohol and prescription medications, including a state court judge, "a long[-]time friend of [the victim]." Though such testimony had the potential to bolster Hawkins' defense, calling these witnesses would also have posed significant risk. It appears that the judge and others were well-acquainted with both the victim and Hawkins, and it is clear that the two had a stormy relationship. Once these witnesses took the stand, the prosecution could have cross-examined them about the troubled couple's *other* altercations, both verbal and physical. The very fact that the two had come to blows on prior occasions would tend to hurt, rather than help, Hawkins' defense, as the evidence introduced at trial showed that Hawkins (a man) is much bigger and stronger than was the victim (a woman). In addition, the victim had recently undergone major surgery (a full hysterectomy), and, as the two lived together, Hawkins was certainly aware of that. The jury could then infer that the victim, in addition to being smaller and weaker than Hawkins, was more vulnerable still after surgery.

Indeed, if any of these proposed witnesses had testified that *Hawkins* was the aggressor in any of the prior fights, that fact would completely overwhelm any potential benefit of such testimony to the defense (especially since Hawkins was essentially uninjured in the present case, while the victim had extensive bruising over various parts of her head and upper body). Finally, Hawkins himself said multiple times – on video – "I killed her." Defense counsel tried to couch these confessions in terms of Hawkins' drunken confusion, "survivor's guilt," and lack of knowledge of the victim's precarious heart condition. Videotaped confessions are, however, powerful evidence – and unlikely to be

- 18 -

overcome by testimony regarding the victim's prior acts of aggression.

Defense counsel argued that Hawkins acted in self-defense – and that the prosecution presented insufficient evidence that the fight caused the victim's cardiac arrest. However, the prosecution's case was a strong one, and the proposed testimony of the uncalled witnesses could well have harmed, rather than helped, Hawkins' defense. Defense counsel was in the best position to choose which witnesses to call, and the court will not second-guess counsel's strategic trial decision. This ground for relief is without substantive merit.

### Claims Brought for the First Time in Hawkins' Traverse

Mr. Hawkins raises several claims in his traverse which he did not bring in his petition: (1) failure of the prosecution to turn over the transcript of a recorded statement Hawkins gave; and (2) deficiency of the indictment. However, "[a] first petition for post-conviction relief under § [2254] should raise all available claims. Informal reference to a new claim in a reply brief will not suffice to raise a claim if the district court does not address that claim in its order." *United States v. Barrett*, 178 F.3d 34, 57 (1st Cir. 1999) (applying rule to motion for *habeas corpus* relief under 28 U.S.C. § 2255). This rule has been codified as to *habeas corpus* filed under § 2254 in Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts: "The petition must … specify all the grounds for relief available to the petitioner . . . ." In addition, a petitioner has no right to amend his pleadings without leave of court, which he did not seek; thus, these issues are not properly before the court. *United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998).

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. As to Mr. Hawkins' claims regarding ineffective assistance of counsel, he has not shown that counsel

provided deficient representation; nor has he shown that he suffered prejudice to his legal position arising out of counsel's representation.  Similarly, Mr. Hawkins' claims that the evidence was insufficient to support the verdict of guilty and that the court gave improper instructions to the jury are without merit.  Thus, all of Mr. Hawkins' claims must be denied on the merits.

In the alternative, the instant petition for a writ of *habeas corpus* must be dismissed because the State's highest court has already ruled on the merits of all grounds for relief set forth in the instant petition.  The Mississippi Supreme Court's decision on these issues was neither contrary to, nor did it involve an unreasonable application of, clearly established Federal law.  In addition, the Mississippi Supreme Court did not unreasonably construe the facts of the case in light of the evidence presented.  Thus, the grounds for relief in this petition are barred from federal *habeas corpus* review under § 2254(d).  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 17th day of July, 2017.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**

- 20 -